```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JOHN MORGENTHALER,                          :
                                            :
                    Plaintiff,              :
                                            :           ORDER GRANTING RELIEF
          -against-                         :
                                            :           03 Civ. 5941 (AKH)
FIRST UNUM LIFE INSURANCE CO.,              :
                                            :
                    Defendant.              :
-------------------------------------------------------x
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiff John Morgenthaler, a floor trader and partner of Spear, Leeds & Kellogg ("SLK"), a member firm of the New York Stock Exchange, claimed total disability under two policies issued and administered by First Unum Life Insurance Company ("First Unum"), one to the firm directly (the "SLK Policy"), and the second, to the New York Board of Trade, a multi-employer group of which SLK was a constituent (the "BOT Policy"). First Unum denied benefits under both policies and upheld the denials on administrative appeal. Plaintiff sought review of those determinations by this Court.

I held an initial hearing on the administrative record August 18, 2004. As both counsel represented to me, the terms of neither the SLK Policy, nor the BOT Policy, provided for administrative discretion and, therefore, I was authorized to conduct a "de novo" review under both policies. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Upon such de novo review, I found that Plaintiff was disabled under the policies' terms. (Summary Order dated Aug. 19, 2004).

Defendant filed a timely motion for reconsideration September 2, 2004 pointing out that the Certificate of Coverage as to the BOT Policy, and the whole policy which integrated the Certificate, in fact provided for discretionary review by Defendant. The motion was stayed in favor of settlement negotiations, which were unsuccessful, and then renewed. By supplemental motions,

1

Defendant seeks confirmation of its administrative determinations, and Plaintiff seeks (1) attorneys' fees; (2) prejudgment interest; (3) a de novo standard of review; and (4) a final money judgment.

**I.      Disability Determination**

The plans at issue are employee benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq.  ERISA does not set out the appropriate standard of review for actions challenging benefit eligibility determinations.  Firestone, 489 U.S. at 109.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Id. at 115.  "Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'"  Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).  Under the arbitrary and capricious standard of review, a court can overturn an administrator's denial of benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Pagan, 52 F.3d at 442.

To determine whether the administrator is conferred discretionary authority, the court is to consider the plain language of the plan documents.  "Although a plan need not contain any magic words such as discretion and deference, it must, nevertheless, give some unambiguous indication that discretion has been conferred."  Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 739 (2d Cir. 2001) (quoting Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1265, 1267-71 (2d Cir. 1995) (internal quotation marks and citation omitted)).  A plan may invoke discretion when it describes eligibility as a condition "determined by" the decision-maker.

2

Fay v. Mt. Sinai Medical Center Point-of-Service Plan, 287 F.3d 96, 104 (2d Cir. 2002); Simone v. Prudential Ins. Co. of Am., 2005 WL 475406, at *6 (S.D.N.Y. Feb. 28, 2005).

In its timely-filed motion for reconsideration Defendant showed that the Certificate of Coverage it issued, summarizing the terms and conditions of the BOT Policy, provided for administrative discretion. Defendant contended that the Certificate should control and, therefore, I should defer to the decision of the administrator and its rejection of Plaintiff's claim of disability with regard to the BOT Policy. See Pagan, 52 F.3d at 441. Plaintiff argues that the Certificate is not part of the Policy, and even if it is, the Policy trumps the Certificate, and the Policy does not grant discretion. Defendant did not challenge my de novo finding of disability with regard to the SLK Policy, and continues to pay Plaintiff under that policy.

Defendant contends that the Certificate of Coverage is a physical part of the Policy of Insurance, and is integral to the BOT Policy. The cover page of the BOT Policy sets out explicitly its constituent parts. Specifically, it states that "[t]his policy consists of: all policy provisions and any amendments and/or attachments issued; employees' signed applications; and the certificate of coverage." (Ex. B at C.FP-1). The Certificate of Coverage is page CC.FP-1 of the Policy, identified as such in the Policy's Table of Contents at page TOC-1. The Certificate of Coverage explains that Defendant "has discretionary authority to determine . . . eligibility for benefits." (Id. at CC.FP-1). The Certificate also notes that "[i]f the terms and provisions of the certificate of coverage . . . are different from the policy . . ., the policy will govern." (Id.). The description of long term disability benefits states that a beneficiary is "disabled when [First] UNUM determines that" the participant is unable to perform the substantial and material duties of the occupation. (Id. at LTD-BEN-1).

The precise placement of discretionary language in a policy is irrelevant. A grant of discretion solely in a certificate of coverage is sufficient to invoke judicial deference where the

3

certificate is explicitly part of the policy. See Shyman v. Unum Life Ins. Co., 427 F.3d 452, 455 (7th Cir. 2005). Where the discretionary language in the certificate is not contradicted by language in some other part of the policy, it governs. Parisi v. UNUMProvident Corp., 2005 U.S. Dist. LEXIS 27240, at *6-9 (D. Conn. Nov. 7, 2005) (finding no contradiction between policy's language of "determines that" and certificate's language of "has discretionary authority," where "the policy governs" in the case of contradictions). But see Bolden v. Unum Life Ins. Co. of Am., 2003 WL 921764, at *3 (N.D. Ill. 2003) (describing provision in policy that Unum "determines that" and provision in certificate at Unum "has discretionary authority" as different, and holding that policy, which governed, did not grant discretion).

I find no inconsistency between the terms of the Certificate, plainly providing that Defendant "has discretionary authority" to determine eligibility for benefits, and the terms of the main Policy, providing that Defendant shall "determine[]" if participant is disabled. The construct as a whole should be interpreted harmoniously, and not to find contradictions. Restatement (Second) of Contracts § 202 (1981).

Plaintiff presents a ruling by the New York State Superintendent of Insurance, expressing the determination of the Insurance Department that discretionary clauses in disability insurance policies are "unjust, unfair, inequitable, misleading, deceptive, or contrary to law or to the public policy of the state," and advising that such clauses "will no longer be approved by the Department." Circular Letter No. 8 (Mar. 27, 2006). The Insurance Department stated that it based its determination mainly because of the rulings of federal courts in connection with such clauses, deferring to the decisions of administrators where policies contained such clauses and upholding the decisions of administrators unless they were found to be "arbitrary and capricious." The Insurance Department called on insurers voluntarily to eliminate such clauses from existing contracts, or be threatened with an injunctive proceeding.

4

However, the March 2006 Circular Letter was withdrawn by a subsequent ruling by the Superintendent, to allow for regulatory action on the issue. Circular Letter No. 14 (June 29, 2006). State law is preempted by ERISA. ERISA § 514(a). Employee benefits plans like the one in question do not fall under the exception to preemption established by ERISA for state insurance law. See id. § 514(b). Since the policies in question are employee benefit plans, not insurance plans, ERISA preempts the extrastatutory letter for the Superintendent, even if it were to be given the status of law. The law in this Circuit requires me to give deference to administrative decisions made under such clauses, notwithstanding the Superintendent's criticisms. See Pagan, 52 F.3d at 441.

Finally, Plaintiff argues that First Unum's disability determination was tardy, and thus does not warrant deference. Plaintiff submitted his appeal on April 23, 2002, and it was not denied until August 14, 2002, 113 days later. The regulations implementing ERISA require that appeals of adverse benefit determinations be decided within a reasonable time but not later than sixty days after receipt of the appeal. 29 C.F.R. § 2560.503-1(h)(4)(i). Plaintiff cites Nichols v. The Prudential Insurance Co. of America, 406 F.3d 98, 109 (2d Cir. 2005), where the Court of Appeals determined that an inherent denial based on a failure to render an appellate determination was not owed deference. The holding of Nichols is limited to those cases where the administrator fails to respond at all, not those cases where the response is tardy. Where the response is merely procedurally tardy, the denial is still owed deference. Hammer v. First Unum Life Ins. Co., 2004 WL 1900334 (S.D.N.Y. 2004); Campanella v. Mason Tenders District Council Pension Plan, 299 F. Supp. 2d 274, 290 (S.D.N.Y. 2004); McGarrah v. Hartford Life Ins. Co., 243 F.3d 1026, 1031 (8th Cir. 2000).

My decision favoring Plaintiff on the issue of disability was a close call, based on my de novo review of the administrative record. Under a standard of deference—and I must apply

5

this standard under the BOT Policy—my previous decision cannot stand. There is substantial medical evidence in the record supporting the administrative determination that Plaintiff could still perform material and substantial duties of his occupation and, therefore, I must defer to Defendant's determination. I acknowledge that the results under the SLK Policy and the BOT Policy now become contradictory, but that is inherent in close decisions made by two different triers of fact. Accordingly, giving deference to the administrative decision, I hold that Plaintiff may not recover for a long-term disability under the BOT Policy. I grant Defendant's motion for reconsideration and I vacate in part my Order dated August 19, 2004. My earlier determination that Plaintiff is entitled to recover (and, largely, has recovered) under the SLK Policy is not affected.

## II. Income Determination

Defendant made a lump sum payment to Plaintiff under the SLK Policy, in the amount of $321,240.15, and continues to make monthly payments of $8,431.50 under that policy. Plaintiff, however, contends that the income base upon which such payments are to be calculated is higher than the amount used by Defendant. Part of the income Plaintiff had received prior to disability was treated by Plaintiff in his tax filings as income he received as a nominee for his wife, thus reducing the applicable tax bracket. However, Plaintiff paid premiums to Defendant based on his full income, including the nominee's income, and challenges Defendant's exclusion of such nominee-treated income from Plaintiff's base. Plaintiff contends that he should have been paid a lump sum of $429,381.15 under the SLK Policy, not the $321,240.15 that Defendant paid him, and that his monthly payments should be $10,850.77, not $8,431.50.

Under the SLK Policy, a permanently disabled beneficiary is entitled to be paid 60% of his Basic Monthly Earnings. Basic Monthly Earnings is defined under the policy as "average monthly earnings as figured . . . from the 1099 Form received exclusively from Spear, Leeds &

Kellogg-Future Division," averaged over the 36 months prior to disability. Plaintiff's Basic Monthly Earnings, so averaged from the 1099s, comes to $18,084.60. Sixty per cent of that comes to $10,850.77, which Plaintiff contends he should have been paid under the plain meaning of the SLK Policy. The terms and conditions as defined by the parties are to govern the interpretation and execution of a contract. Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998).

Unquestionably, regardless of labels of "nominee" or otherwise, and regardless of deductions, Plaintiff is entitled to 60% of the average of 36 months of Basic Monthly Earnings he earned from Spear, Leeds & Kellogg, and that is what Defendant should pay him. The rights and obligations between Plaintiff and the Internal Revenue Service are not Defendant's concerns. Nor is Defendant entitled to a windfall based on positions Plaintiff took in reporting his taxes. I hold that Defendant must pay Plaintiff according to Defendant's contract obligations, as the contract defined "Basic Monthly Earnings."

### III. Income Tax Determination

The third issue that I have to decide is which interest rate to apply to Defendant's lump-sum payment to Plaintiff under the SLK Policy: a federal funds rate or the 9% rate provided by the Civil Practice Law and Rules of New York. Section 5001 of the New York Civil Practice Law and Rules allows for the application of a 9% interest rate to arrears when the contract does not otherwise specify. N.Y. C.P.L.R. § 5001. I hold that the 9% rate of interest, as the rate payable on contract obligations where the contract does not specify an interest rate, is to be applied to the lump-sum payment made under the SLK Policy. Exercising my discretion, I find that that rate is fair and customary in New York, the place of contracting and where Plaintiff worked; is consistent with the remedial purpose of ERISA; and serves the need fully to compensate Plaintiff for the money

withheld from him.  See Jones v. Unum Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000). The parties shall agree to the appropriate computation, at simple interest, and submit that amount to the Clerk who enters judgment.

**IV.     Attorneys' Fees Determination**

In its discretion, the district court may award attorneys' fees and expenses to a prevailing party in an action under ERISA.  29 U.S.C. § 1132 (g)(1); Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).  In relation to criteria applicable to the circumstances of this case, the court is to evaluate the degree of culpability and bad faith of the parties, the need for deterrence of similar conduct by others, and the relative merits of the parties in the lawsuit.  Id.

This is a close case.  Plaintiff persuaded me that his disabilities in his neck and arm caused him to be disabled as a floor trader, but the issue was not free from doubt and the decision of the administrator to the contrary was certainly not arbitrary or capricious.  The merits were about even, and do not justify an award of attorneys' fees.

Following my determination, Defendant paid Plaintiff the amount it believed to be due under the SLK Policy, but held back a significant amount.  Its rationale was not supported by the terms of the SLK Policy, and the cases it cited are readily distinguishable.  An award of attorneys' fees on this aspect of the case is appropriate to deter such conduct and to promote just and prompt settlements of amounts that are due.

Plaintiff asks for $123, 457.50 in attorneys' fees and $7,164 in expenses.  In light of the evaluations stated above, I consider a recovery of $45,000, or a bit more than one third of the total claim, plus $3,500 in expenses, just and reasonable, and that amount may be recovered.

## V. Conclusion

For the reasons stated above and on the record at the August 2004 oral argument, I hold that Defendant's determination that Plaintiff is not entitled to benefits under the BOT Policy is entitled to deference and is not arbitrary and capricious. I grant Defendant's motion for reconsideration and vacate in part my Order dated August 19, 2004. I also hold that the base income to be used for calculation of Plaintiff's benefits under the SLK Policy includes income designated to his nominee on his tax forms, and that Plaintiff is entitled to 9% pre-judgment interest on those benefit payments. Finally I hold that Plaintiff is entitled to a recovery of $45,000 in attorneys' fees and $3,500 in expenses. The parties shall submit to the Court a proposed judgment not inconsistent with these rulings within seven days.

SO ORDERED.

Dated: New York, New York
August 22, 2006

ALVIN K. HELLERSTEIN
United States District Judge

9